UNITED STATES NATIONAL BANK OF OMAHA V. J. H. GEER ET AL.

FILED JUNE 23, 1898.   No. 7607.

1. **Commercial Paper:** INDORSEMENT: EVIDENCE. Where commercial paper is indorsed in blank, the terms of the contract may be shown by parol evidence to be different from those which the law implies in such cases.

2. ———: ———: ———. A restrictive indorsement in unambiguous language cannot be contradicted or explained by evidence resting in parol.

3. ———: ———: ———. A certificate of deposit indorsed by the payee, "Pay to the order of R. C. O., Cash, for account" of the indorser, is a restrictive indorsement, vests no general property to the paper in the indorsee, but merely constitutes him an agent for the purpose of collecting; and parol evidence is not admissible to establish that the transfer of title was absolute.

4. ———: ———: ———. The former opinion in this case, reported in 53 Neb. 67, overruled.

REHEARING of case reported in 53 Neb. 67. *Former decision overruled and judgment below affirmed.*

*J. C. Cowin* and *W. D. McHugh*, for plaintiff in error.

*O. H. Scott* and *Cobb & Harvey*, *contra*.

NORVAL and SULLIVAN, JJ.

At the last term of this court a decision was entered in this case reversing the judgment of the trial court. Upon a proper application a rehearing was granted, and the cause has been a second time submitted for our consideration. The issues involved and the essential facts of the case are stated with sufficient accuracy in the former decision reported in 53 Neb. 67. In reversing the judgment below we proceeded upon the theory that the form of the indorsement of the certificate of deposit was ambiguous and not conclusive, as to the intentions of the parties; that it was permissible to show by parol evidence the exact nature of the contract, and that the only inference to be drawn from the proofs established a sale of the draft and not a bailment for collection. A careful re-examination of the record and questions thereby presented, assisted by the able argument of counsel, has convinced us that the former decision was erroneous. In the opinion it was said: "Whatever may be the law elsewhere, it is the law of this state that as between the immediate parties the true relationship may be shown, notwithstanding the form or terms of the indorsement itself," citing *Roberts v. Snow*, 27 Neb. 425; *Dusenbury v. Albright*, 31 Neb. 345; *Salisbury v. First Nat. Bank of Cambridge*, 37 Neb. 872; *Holmes v. First Nat. Bank of Lincoln*, 38 Neb. 326; *Corbett v. Fetzer*, 47 Neb. 269. The adjudications of this court do not warrant the statement of the rule as broadly as above indicated, nor do the decisions elsewhere support such a doctrine. The general rule is, and it has been frequently asserted by this court, that the terms of a written contract cannot be contradicted, varied, or explained by parol evidence of a prior or contemporaneous oral agreement between the parties. (*Hamilton v. Thrall*, 7 Neb. 210; *Dodge v. Kiene*, 28 Neb. 216; *Watson v. Roode*, 30 Neb. 264; *Kaserman v. Fries*, 33 Neb. 427; *Mattison v. Chicago, R. I. & P. R. Co.*, 42 Neb. 545; *Clarke v. Kelsey*, 41 Neb. 766; *Maxwell v. Burr*, 44

Neb. 31; *Commercial State Bank v. Antelope County*, 48 Neb. 496; *Waddle v. Owen*, 43 Neb. 489; *Nebraska Exposition Ass'n v. Townley*, 46 Neb. 893.) It is true this court has more than once decided that when the rights of *bona fide* purchasers of negotiable paper for value before maturity are not involved, it is competent to show by parol evidence, in cases of indorsement in blank of such paper, that the terms of the agreement between the parties were other and different from those which arise by presumption of law. (*Holmes v. First Nat. Bank of Lincoln*, 38 Neb. 326; *Corbett v. Fetzer*, 47 Neb. 269.) The principle underlying these cases does not contravene the general rule, recognized and applied by this and other courts, that parol contemporaneous evidence cannot be received to contradict or vary the terms of a written instrument, for the obvious reason that the contract of a blank indorsement is not expressed in writing, but rests in legal implications, and this *prima facie* presumption of law may be overthrown, as between the original parties to such an indorsement, by the admission of competent parol evidence establishing the real terms of the agreement. If the law conclusively presumed the liability created by an indorsement in blank of commercial paper, then, of course, the actual terms of the contract would not be a proper subject of inquiry, and neither party would be permitted to show by parol the true agreement. But the presumption of liability arising from such an indorsement is *prima facie* merely, and not conclusive; hence, as against all except *bona fide* holders for value, the true terms of the contract may be shown by evidence resting in parol. The indorsement of the Hebron bank on the certificate of deposit involved herein was an express written contract, not open to contradiction or explanation by proof of extrinsic facts, and conclusively proves an agency merely, and that the title and ownership of the paper never passed to the Capital National Bank. This doctrine is sustained by an unbroken line of authorities.

In *First Nat. Bank of Chicago v. Reno County Bank*, 3

Fed. Rep. 257, it was distinctly decided that an indorsement of a bill of exchange directing the drawee to pay to another "on account of" the indorser, or "for collection," is a restrictive indorsement carrying with it notice that the indorser did not thereby part with title to the paper or to its proceeds when collected. To the same effect are *Beal v. City of Somerville*, 50 Fed. Rep. 647; *Hoffman v. First Nat. Bank of Jersey City*, 46 N. J. Law 605; *Cecil Bank v. Farmers Bank of Maryland*, 22 Md. 148; 1 Morse, Banking sec. 217; *Blaine v. Bourne*, 11 R. I. 119; *Sweeny v. Easter*, 68 U. S. 166; *Balbach v. Frelinghuysen*, 15 Fed. Rep. 675; *First Nat. Bank of Crown Point v. First Nat. Bank of Richmond*, 76 Ind. 561; *White v. Miners Nat. Bank*, 102 U. S. 658.

*Leary v. Blanchard*, 48 Me. 269, was an action upon a promissory note indorsed by the payee, "Pay to Arthur Leary, or order, for account of the Atlas Mutual Insurance Co." It was ruled that the indorsement was restrictive and parol evidence was inadmissible to show that the transfer was absolute.

A draft bore the following indorsement: "Pay Penn Bank, or order, for account of People's Bank, McKeesport, Pa. C. R. Stuckslager, Cashier. D. Gardner, As. Cash." This indorsement was before the court for consideration in *Freeman's Bank v. National Tube Works Co.*, 151 Mass. 413, and it was held to be restrictive for collection, merely giving notice that the title and ownership of the paper had not passed from the indorser.

*Third Nat. Bank of Syracuse v. Clark*, 23 Minn. 263, was an action on a promissory note made payable to the order of the Williams Mower & Reaper Company and indorsed by the payee to the Third National Bank of Syracuse, or order, for collection. It was adjudicated in that case that the indorsement was restrictive and that parol evidence was not admissible to prove it absolute. (*Rock County Nat. Bank v. Hollister*, 21 Minn. 385.)

In *Armour Bros. Banking Co. v. Riley County Bank*, 30 Kan. 163, there was involved the scope and effect of the

34

following indorsement on a draft: "Pay W. H. Wynants, Esq., Cashier, or order, for account of the Riley County Bank of Manhattan, Kansas. J. K. Winchip, Cashier." Parol evidence was offered to contradict the indorsement, which, upon objection, was excluded by the trial court. Brewer, J., in delivering the opinion of the court on review, used this language: "The ruling of the district court was founded upon the idea that this indorsement is a restrictive indorsement, defining the rights and title of the indorsee, and not open to contradiction or explanation by parol testimony. In other words, this indorsement is a written contract, conclusive as against any parol testimony, and which shows absolutely that the plaintiff was not the owner, the real party in interest, but only held the draft as agent, and for the purposes of collection. That this is a restrictive indorsement, and that it operated to transfer the draft to the plaintiff only as agent for purposes of collection, cannot be doubted. (Byles, Bills 152; 1 Daniel, Negotiable Instruments sec. 698; *Blaine v. Bourne*, 11 R. I. 119, 23 Am. Rep., 429, and cases cited in the opinion.) In this latter case, speaking of an indorsement almost identical with the one at bar, the court says: 'The indorsee is rather an agent of the indorser with power of substitution, and the bill is still in the possession of the indorser by his agent.' And again: 'The words are notice that the restricted indorsee has no property in the bill.' It will be perceived that this is not a mere blank indorsement, but one in which the contract is written out in full, and, therefore, like any other written contract, not to be contradicted or varied by parol evidence (Greenleaf, Evidence, secs. 277, 281, 282; 1 Daniel, Negotiable Instruments sec. 717); so that upon the face of the paper it appears affirmatively that the plaintiff is not the owner, but only an agent for collection."

No case has come within the range of our vision which is in conflict with the adjudications already mentioned, nor is it believed that any decision can be found which lends support to the doctrine that it is competent to

prove, in case of a restrictive indorsement like the one before us, that the actual contract was different from the one expressed in writing on the back of the certificate of deposit.

It is argued by counsel for plaintiff in error that the contractual rights of the parties are not expressed in the indorsement in question; that the law infers a contract therefrom. We quote from the brief: "When one writes upon the back of a negotiable instrument 'pay to the order of A. B., for account of,' and signs it, his contract is not set forth in the writing. His obligations under this indorsement, and the rights and duties of the indorsee under this indorsement, are not in anywise set forth in the indorsement. It is not a written contract stating the mutual rights and obligations of the parties. The law merchant in the case of this indorsement, as in the case of one in blank, infers from the indorsement a certain contract, and it is this inferred contract which the law enforces when it holds the signer to the usual obligations. From a restrictive indorsement the law infers a certain contract. From an unrestricted indorsement the law infers a certain other contract. In both cases, it must be clear the contract is inferred, and in no sense written." In this contention counsel are in error. This indorsement, in unequivocal language, shows that the title to the paper, except for the purposes of collection, was to remain in the Hebron bank, and that the indorsee, the Capital National Bank, was agent merely for collection. The rights of the parties, under this indorsement, do not rest upon any implication of law, but are determined by the contract of the parties as expressed in the indorsement. And to permit oral evidence to be received to show the agreement was different from that indicated by the language used would be in violation of the principle that a written contract may not be varied by parol. The same result would be reached whether the indorsement be regarded the entire contract or said indorsement and letter transmitting the certificate of deposit be con-

strued together. The letter of transmittal states that the certificate was "for collection and credit." These words clearly indicate that the transmission was for the purpose of collection, and when collected the proceeds were to be credited to the transmitting bank. Until the collection was made the relation of debtor and creditor was not to exist. To hold otherwise would disregard the meaning of the word "collection." In *Branch v. United States Nat. Bank,* 50 Neb. 470, it was decided that the legal title of commercial paper indorsed "for collection" rests in the indorsee only to the extent of authorizing him to demand and enforce payment, and that the true owner of the paper so indorsed may control the same until paid in full, and may intercept the proceeds thereof in the hands of an intermediate agent.

The written contract is unambiguous, and it is unnecessary to resort to parol evidence to ascertain the true intention of the parties. An explicit written agreement cannot be contradicted or qualified by proof of any usage, custom, or course of dealing, while proof thereof is permissible in cases of doubt where the contract is expressed in vague and ambiguous language. The indorsement in question and the letter of transmittal, neither singly nor when considered together, show that the Hebron bank was divested of its title to the certificate of deposit in question. This is conceded by counsel for plaintiff in error, but they rely upon the prior course of dealing and the acts and conduct of the parties to overthrow the plain and unambiguous written contract of the parties and to establish a transfer of title to the paper. As we have seen, evidence of such matters is not admissible. The fact that the Hebron bank repeatedly sent remittances to the Capital National Bank, the paper containing restrictive indorsements the same as this, and from time to time drew against its remittances and was allowed interest from the Capital National Bank on its average balances, is insufficient to establish that the transfer of this paper was absolute. (*Scott v. Ocean Bank,* 23 N. Y. 289; *Fifth Nat. Bank v. Armstrong,* 40 Fed. Rep. 46.)

Upon principle and authority we are fully persuaded that the court below did not err in finding that the Hebron bank never parted with its title to this certificate of deposit. The judgment of reversal entered herein is vacated, and the judgment of the district court is

AFFIRMED.

IRVINE, C., dissenting.

I adhere to the former opinion. It seems to me that the opinion now held by the majority of the court logically overrules a number of earlier cases. If not, it certainly creates a distinction which is confusing, and which has no reason for its existence. It has been held that, as between the original parties, parol evidence is receivable to vary or to contradict the terms of a general indorsement, and also that such evidence may be received to show that the liability of those signing the note on its face is other than would be implied from the place and character of the signatures. The indorsement in this case is no more the expression of a complete contract than is a general indorsement. On its face it is simply an authority to the maker of the certificate to pay the same to R. C. Outcalt for the benefit in some way of the indorser. It is only by implication of law that these words acquire any of the distinctive features of a contract. To show that the reasons for allowing extrinsic evidence, as between the parties, apply as well to restrictive as to general indorsements the following language from *Dye v. Scott*, 35 O. St. 194, which has been quoted with approval by this court in *Holmes v. First Nat. Bank*, 38 Neb. 326, is pertinent: "If there was a contemporaneous contract between the parties upon which the indorsement was made, both reason and justice require that, as between themselves, the actual and not the presumed contract should be enforced; and, as between them, oral testimony should be admissible to prove the contemporaneous contract. This will not necessarily, or even probably, im-

pair the currency or credit of the instrument as commercial paper. Prior parties to it will not be affected, nor will the rights of subsequent indorsees without notice be impaired or limited in any degree." The above is a statement of a rule generally prevalent with regard to negotiable instruments. Often they are drawn contrary to the real relations of the parties for the very purpose of giving rights to transferees which could not be acquired were the true relations disclosed. A familiar instance is that of an accommodation note or an accommodation indorsement. In the case of the note the contract to pay a certain sum at a certain time is distinctly and fully expressed, and where rights are claimed under the law merchant the liability attaches. But if the payee himself should sue, he would be defeated by extrinsic evidence to show that, as between the parties, the note did not express the contract. In this case no rights are claimed under the law merchant. It is not sought to charge any one upon or through the indorsement. The question is simply whether the Hebron bank sold the certificate to the Lincoln bank. To transfer negotiable paper no compliance with the law merchant is necessary. It may be transferred so as to pass the holder's rights by assignment like any other chose in action. If it had not been indorsed at all, recovery could be had by proof of a sale. If it had admittedly been first transmitted as a bailment for collection, and the Lincoln bank had afterwards bought it without further indorsement, that fact might be shown. The chief fallacy in the majority opinion lies in treating the case as if rights were claimed under the law merchant, whereas the law merchant is not necessarily involved in the case. The form of the indorsement is merely evidence of what the contract was, but it was only a single step in the transaction and is explained by the other evidence and the acts of the parties in such a way as not even to tend to show a bailment. Other matters are somewhat fully discussed in the former opinion, and I do not care to again refer to them,

nor shall I enter into a discussion of the authorities, except to the extent of repeating that an inspection of the numerous cases cited in the briefs will show that in nearly all of them extrinsic evidence was considered to ascertain the contract, and that the issue has been treated as one of fact in the light of such extrinsic evidence.

HARRISON, C. J., and RYAN, C., concur in the foregoing dissenting opinion.